## AUGUST PETERSON AND ANOTHER v. MINNEAPOLIS & ST. PAUL SUBURBAN RAILWAY COMPANY.[1]

### July 9, 1920.

### No. 21,835.

**Charge to jury — negligence and contributory negligence questions for jury.**

Under the evidence the questions of negligence and contributory negligence were both for the jury, and we find no reversible error in the charge in respect to either question.

Two actions in the district court for Washington county, one by Sarah M. Peterson to recover $10,000 and the other by August Peterson, her husband, to recover $2,500 for injuries sustained by Sarah in collision with defendant's street car. The cases were tried together before Searles, J., who when plaintiffs rested denied defendant's motion to dismiss the actions, and a jury which returned verdicts in favor of defendant. From orders denying their motions for new trials, plaintiffs appealed. Affirmed.

*James E. Trask* and *James Mattimore,* for appellants.
*W. D. Dwyer* and *George H. Sullivan,* for respondent.

TAYLOR, C.

Plaintiff, Sarah M. Peterson, sued to recover for personal injuries caused by being thrown from her buggy when her horse became frightened and uncontrollable; her husband, August Peterson, sued to recover

1 Reported in 178 N. W. 745.

the damages resulting to him on account of the injuries to his wife. The two actions were tried together before the same jury which returned a verdict for the defendant in each case. Each plaintiff appealed from an order denying a new trial, but both cases were submitted together on a single brief.

The only question presented is whether the charge to the jury contained reversible error.

To understand the charge a brief statement of the facts is necessary: A public highway leading from the city of Stillwater to South Stillwater runs easterly along the north side of the grounds of the State Prison and then turns south. Defendant operates an electric street-car line along this highway, but where the accident occurred the railway tracks are at the side of the traveled part of the roadway. Defendant's repairmen, with a repair car operated by a motorman, were engaged in repairing and adjusting the "hangers" or cross wires which support the trolley wire. These "hangers" are about 120 feet apart.

Plaintiff, Sarah M. Peterson, accompanied by her son 13 years of age and driving a horse and buggy, was proceeding along this highway from Stillwater to South Stillwater. She testified that when she came around the corner the repair car was standing still about 300 feet distant; that the horse became frightened and began to prance and jump and attempted to turn, but thinking she could control him she drove on; that when she had proceeded about 75 feet further the repair car started toward them and increased the fright of the horse, and that when the car was nearly opposite them the horse lunged to the side, causing the buggy to strike a telephone pole and plaintiff to be thrown out and injured. She also testified that when the horse began exhibiting signs of fright and attempted to turn, that the roadway was sufficiently wide so that she could have turned around and have taken a different route. She further testified that the car was moving slowly; that it didn't go fast. The motorman and repairmen testified that they had completed their work at one "hanger" and were proceeding to the next; that the car was in motion when plaintiff came around the turn, but that the power had been shut off as they were getting ready to stop at the next "hanger" and the car was drifting on a slight down-grade at the rate of about two miles

an·hour; that the horse exhibited no signs of fright, until he suddenly shied when opposite or nearly opposite the car, and that the car was stopped immediately.

The negligence charged was starting the car after the horse had become frightened and continuing it in motion after knowing that this increased the fright of the horse.

In charging the jury the court said:

"I don't think it was necessary for the motorman, as representing the defendant corporation, to stop his car, if it was moving when he discovered the horse and the manner in which the horse was conducting itself, until a reasonable man occupying his position would have felt and been justified in feeling and believing that the horse was beginning to get out of control of the driver. I don't think a street car is required to stop because horses show nervousness, and a little skittishness, and take a zig-zag course, unless it develops to a point where he, as a reasonable man, would feel and be justified in reaching the conclusion that unless he does something the other party will be injured and brought into peril of injury at least. *So that I don't think it was necessary or incumbent upon the motorman to change in any respect his method of handling this construction car until the situation developed to a point where he should have realized as a reasonable, prudent man that the horse was getting out of control of the driver.* Now where was that point on that road? How far apart were they? That is one of the questions you will have to determine on the testimony. Now to that point—wherever you may find that point to have been—when the motorman would discover, or in the exercise of ordinary prudence should have discovered, that the driver was losing control of the horse, what did the motorman do, or fail to do, that would have avoided this injury—this accident? The plaintiff has testified that the horse jumped to the side of the road when they were fifteen or twenty feet from the car. The car was then moving. Other witnesses say that the horse didn't spring out of the roadway and make for the poles until the horse was opposite the forward end of the car. Well, now, of course *if the horse didn't become uncontrollable and spring out until it was opposite the forward end of the car, on the evidence here, why it was no longer possible for the motorman to avoid that injury,* be-

cause it wouldn't make any difference what he did with the car, if the horse became unmanageable and sprung off towards the poles why it was too late for the motorman to do anything to avoid it. So we are narrowed down to this final inquiry: *What could the motorman have done after he should have realized that the horse was becoming unmanageable and before the horse sprang out of the road toward those poles? It is only in that short interval and space in the road that the duty rested upon the motorman to do anything.* Now * * * if the horse was acting in such a way as to have led a reasonably prudent man occupying the position of the motorman to realize that the horse was getting fractious and the woman was going to lose control of the horse, even though it hadn't quite reached that point, but that the horse was being frightened more and more by the car, then the motorman, if he could have done anything by way of stopping the car, it was his duty to do that. * * * So far as the question of defendant's negligence is concerned the way I look at this case, it comes down to that proposition: What could the motorman have done after he should have realized the peril in which the plaintiff was placed by her fractious horse, between that point and that moment and the moment when the horse sprang off to the side of the road and became absolutely uncontrollable? If he could have done anything in that interval of time it was his duty to do it, and if he didn't do it why the defendant will be liable on the ground of negligence for the consequences. * * * The rule of law there is that the action, the conduct, of the motorman in managing the car must have been governed by what he saw of this horse from the time he saw it, or what he as a prudent person under similar circumstances should have seen. The law imposed upon him the duty to look ahead and anticipate that there might be other persons using that road and if the horse was acting in such a way that a person of ordinary prudence would have seen the horse at an ordinary point on that road, why, it is all the same as though he had seen it."

Plaintiffs assign as error the three paragraphs which we have italicised. They contend that these paragraphs gave the jury to understand that no duty rested on the motorman to do anything until he real-

ized that the driver was losing control of the horse, and they insist that the motorman was required to act earlier than that.

At the trial plaintiffs made no objection to the part of the charge above quoted, hence verbal inaccuracies or inadvertent expressions, which we may assume would have been corrected if attention had been called to them at the time, are not ground for reversal unless, when taken in connection with the entire charge, they would naturally tend to mislead the jury. 3 Dunnell, Minn. Dig. § 9798.

We think that the charge taken as a whole did not misstate the rule nor tend to mislead the jury, and that it contained no error which would justify a reversal.

Plaintiffs also contend that there was no evidence tending to show contributory negligence on the part of plaintiff Sarah, and that the court erred in submitting that question to the jury. We cannot say that her own testimony, describing the fright and actions of the horse, and her efforts to drive him toward the car, instead of turning and taking a different route, shows as a matter of law that she was free from contributory negligence. Furthermore the motorman and the repairmen testified that the horse came down the road at a rapid trot with the 13-year old boy driving, instead of his mother, and that she "grabbed" the lines from the boy at or just before the accident. The evidence was sufficient to carry the question of contributory negligence to the jury.

Plaintiffs also contend that the charge permitted the jury to find plaintiff Sarah guilty of contributory negligence, although such negligence did not contribute proximately to the happening of the accident. We are unable to sustain this contention. The court said:

"The husband is not entitled to recover for his loss unless the wife is entitled to recover for her loss, and if her loss was brought upon her personally by her own want of ordinary care, why the husband will suffer accordingly. So the question is whether or not the wife failed to use that care that persons of ordinary prudence under the same circumstances would have used. * * * That proposition of contributory negligence rests upon whether or not the wife should have done something after she realized her peril, that she didn't do which would have saved her if she had done."

This showed sufficiently that the negligence which would preclude recovery was negligence that contributed to the happening of the accident.

We find no other questions requiring special mention and the orders appealed from are affirmed.